Davis vs. The Town of Fulton.

*September 1 — September 27, 1881.*

52 657
103 95

VILLAGE PLAT. *(1) Record of plat as evidence. (2) Owner's certificate, how to be written on plat.*
HIGHWAY. *(3) Proof of its existence.*
REVERSAL OF JUDGMENT: *(4) For immaterial error.*

1. The fact that the *record* of a village plat and the owner's certificate, required by the statute, is upon two papers, attached together, is not sufficient proof that the *original* was so made.
[2. Even under the revisions of 1849 and 1858, which required such a certificate to be *indorsed* upon the plat, *quære* whether the word "indorse" should be strictly construed, as requiring the certificate to be written upon the *back* of the plat. But it was not necessary to determine that question in this case.]
3. Proof that a parcel of ground had been used as a highway for twenty years, and that work had been done thereon under the direction of the overseer of highways, *held* sufficient to show that the same was a highway, which the town was bound to keep in repair.
4. The improper rejection of evidence *held* not sufficient ground for reversal, where similar evidence was in fact given by several witnesses for the appellant, and there was no contradictory evidence and no reason to think that the verdict could have been affected by the error.

APPEAL from the Circuit Court for *Rock* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought to recover damages for an injury sustained by plaintiff from falling into a ditch in what is called Swift street, in the village of Edgerton, in the town of Fulton. The evidence shows that Swift street extends north from Front street, which runs east and west; that the ditch in which the respondent was injured crosses Front street, and extends north along Swift street, east of the center of said street, for several rods, and then leaves the street on the east side. This ditch is made to carry off the water, and is covered with plank across Front street, and north on Swift street a short distance, and then is left open for the remainder of its length on Swift street. On the east side of Swift street, and adjoining Front street, there is a block of stores, and the post-office is in one of them; but whether these stores and post-office front on Front street or Swift street does not very clearly appear from the evidence; but in the basement of the block there are a bakery and a confectionery shop opening on Swift street. There is also a meat market across the street. Twelve or thirteen rods north of the north end of the covered part of the ditch there is a livery stable, known as Humphrey's stable, on the east side of Swift street. There was no travel with teams on the east side of the ditch on Swift street, and no sidewalk on that side of the street north of the buildings near Front street. There was a sidewalk on the west side of the street, running north forty rods. The street was traveled with teams, and had been for twenty or twenty-five years, as much as any street in the village. People traveling on foot, going north on Swift street, generally cross over to the west side and take the sidewalk, or else the middle of the street west of the covered ditch. On the west side of Swift street, and near Front street, there is a block of buildings, a hotel, barn, and three or four dwellings. At the end of the covering the ditch was four feet deep and about five feet wide. There was no

railing or other guard or protection where the covering stopped.

"The plaintiff testified that on the 13th of January, 1880, he came into town in the afternoon with a horse; came in from the north, on Swift street, and put up his horse at Humphrey's livery stable, on the east side of the street. After putting out his horse, he went across to the west side of Swift street, and up the street on the west side, and then turned off on School street, and went to a Mr. Clark's; took tea at Clark's, and then went out to look after his horse at the livery stable; went south on Albion street, which is west of Swift street, and nearly parallel to it, until he came to Front street; then turned and took the sidewalk on the north side of Front street, and went east until he came to about the center of Swift street, and then turned off to go to the livery stable. He put his hand on the west end of the railing, and stepped down. Thinks there was a little descent, if he remembers rightly. Stepped on to a plank walk, and then continued his course towards the livery stable until he dropped into the ditch. The evening was, and the day had been, dark and cloudy. He further testified that he had very little knowledge of the streets in the village, and especially of Swift street. It would seem from the evidence that this railing which the plaintiff speaks of, was where the covered ditch crossed Front street.

" There was some evidence given on the part of the defendant tending to show that the plaintiff had been frequently on Swift street, and was familiar with the same. The defense relied mainly on the allegation that the plaintiff was well acquainted with the street, and knew of this covered ditch in the same, and that he fell into it by his own negligence. As tending to prove this allegation, the defendant gave evidence showing that, at the time the plaintiff fell into the ditch, the place where the covering of the ditch ended and where the plaintiff fell into it was lighted up by the lights in the bakery and confectionery shop and meat market.

" The plaintiff recovered, and the defendant town appeals, and alleges that the court erred, *first*, in permitting the plaintiff to give in evidence the record of a plat of the village of Edgerton; *second*, in rejecting certain evidence offered by the defendant, by the witness J. B. Towne, tending to show that the place where the accident happened was lighted up by the lights in the shops above mentioned."

The cause was submitted for the appellant on the brief of *Bennett & Sale:*

1. No certificate of acknowledgment having been indorsed on the plat of the village as required by the statute (R. S. 1849, ch. 41, secs. 4, 5), such plat was insufficient to pass title or dedicate the streets to public use. *Gardiner v. Tisdale*, 2 Wis., 153; *People v. Beaubien*, 2 Doug. (Mich.), 256. An indorsement on some other paper attached to the plat is not a compliance with the statute. *Montague v. Smith*, 13 Mass., 396. The certificate, not being properly indorsed, was not entitled to record and, of course, forms no part of any record. The whole record, therefore, fails as proof and should have been excluded. *Isham v. Bennington Iron Co.*, 19 Vt., 230–235; *Pidge v. Tyler*, 4 Mass., 541; *Frost v. Beekman*, 1 Johns. Ch., 300. 2. When testimony competent in its character, and pertinent to the issue, is rejected on the trial, the judgment should be reversed for such error, unless it clearly appears that the party could not have been injured by its rejection. *Gillett v. Phelps*, 5 Wis., 429; *Beard v. Dedolph*, 29 id., 136; *Lucas v. Railway Co.*, 33 id., 41.

The cause was submitted for the respondent on a brief by *Norcross & Dunwiddie*, his attorneys, and *John Winans*, of counsel. To the point that the rejection of evidence offered, although it may have been error, will not work a reversal of the judgment if it appears that the appellant was not prejudiced thereby, they cited *Brabbitts v. Railway Co.*, 38 Wis., 289; *Manny v. Glendinning*, 15 id., 53; *State ex rel. Field v. Avery*, 17 id., 672; *Barton v. Kane*, id., 38; *Robbins v. Lin-*

Davis vs. The Town of Fulton.

*coln,* 12 id., 1; *Ganson v. Madigan,* 15 id., 144; *Kellogg v. Railway Co.,* 26 id., 223; *Ketchum v. Zeilsdorff,* id., 514; *Jones v. Parish,* 1 Pin., 494; *Green v. Gilbert,* 21 Wis., 395; *Mather v. Hutchinson,* 25 id., 27; *Appleton v. Barrett,* 29 id., 221.

TAYLOR, J. The first objection is stated in the record as follows: Plaintiff's counsel, after proving, by the register of deeds of the county, that a certain book he had in court was volume 2 of plats in his office, and that the plat of the village of Edgerton was recorded therein, offered the same in evidence. The defendant's counsel objected, "for the reason that there was no certificate on the plat as required by law at the time it was recorded." To this objection the court made the following inquiry: "The certificate is not on that plat?" Defendant's counsel replied, "It is annexed to it; it is required by law to be *upon* it." To this the court replied, "If that be the only objection, I think it must be admitted. There are, obviously, two papers, but they are so attached together that really I think they must be regarded as one paper." The objection was overruled, and the record admitted in evidence. This is all there is in the bill of exceptions upon the subject. The record is not made a part of the bill, nor is it otherwise shown how the certificate required to be made by the owner of the property platted was connected with the original plat.

Under section 2261, R. S. 1878, the certificate of the owner may be indorsed thereon or attached thereto. The statutes of 1849 and 1858 required that the certificate of the acknowledgment of the owner should be indorsed on the plat or map, and that the certificate of the survey and of the acknowledgment should be recorded, and form a part of the record. We cannot determine, from anything which appears in this record, that the certificate of acknowledgment of the owner was not indorsed upon the original plat. The fact that the record of the plat might have appeared to be upon two papers, does not

prove that the original was. But, independent of the fact that the record does not show that the certificate of acknowledgment thereof was not indorsed on the plat, we are not prepared to hold that a literal compliance with the statute would be necessary in order to make the plat effectual under the statute. The same language used in regard to the certificate of acknowledgment of plats in the Revised Statutes of 1849 is used in regard to the certificate of acknowledgment of deeds in sec. 9, ch. 59, R. S. 1849, viz.: "that the officer taking the acknowledgment of a deed shall *indorse thereon* a certificate of the acknowledgment thereof," etc. If the word "indorse" must, in these statutes, be interpreted "to place on the back of," and nothing else, then very few of the deeds recorded in this state have been properly acknowledged, as such acknowledgments almost universally are appended at the foot of the deed; and if the acknowledgment may be appended at the foot of the deed, we can see no objection to its being appended upon a separate piece of paper, if such paper be attached to the deed or plat.

In the only case I have been able to find where it is clear that the legislature intended to require that one writing should be written upon the back of another writing or map, it is so required in express words. See sec. 5, ch. 22, Laws of 1876. This is a statute authorizing lands to be platted for the purpose of assessment of taxes, and it expressly requires that "the person so signing such map and certificate shall acknowledge the same before some officer authorized to take the acknowledgment of deeds, whose certificate of acknowledgment, in the usual form of deeds, *shall be written upon the back of such map* and duly signed by the officer signing the same." This may, I think, be invoked as a legislative construction that the old words, "indorsed on the same," do not necessarily mean "written on the back thereof;" otherwise it would have been sufficient to use the old form of words. In the revision of 1878 it was thought best to repudiate the strict requirement

Davis vs. The Town of Fulton.

of the statute of 1876, and to return to the old rule, with the words added, "or attached thereto," *ex industria*, so that hereafter there might be no question as to the sufficiency of an acknowledgment certified in the usual form.

There is another reason why, even if the ruling of the circuit judge upon this question were erroneous, it should not affect the judgment. Independent of the plat, there was abundant evidence in the case showing that the *locus in quo* was a highway which the town was bound to keep in repair. The evidence not only shows a public use of the *locus* as a highway for twenty years and more, but it also shows that the overseer of highways covered the ditch in question at the place where the accident happened, three or four years previously.

The only other error assigned by the learned counsel for the appellant was the refusal of the court to permit the witness J. B. Towne to answer the following questions: *Question.* "When those windows are lighted on a dark evening, what effect does the light have? Where is the light thrown with reference to this plank-covered ditch and the ditch itself?" *Question.* "Have you noticed the effects, how far the light is thrown and its effect upon the street in lighting it up there?" *Question.* "State to what extent the light of the windows, on a very dark night, throws the light."

These questions relate to the effect which the lights in the meat market, bakery and confectionery shop had in lighting up the street where the accident happened. The witness had stated that he had seen those lights lit in dark nights a great many times. Immediately after the court had refused to let him answer the questions above quoted, he was permitted to answer the following question: "How much space is within the range of light from those windows you have spoken of in this bakery?" *Answer.* "The whole street along there is within the range of the bakery, ordinarily, in a dark night." And to this question, put by the court, "How much of this

space is brought within the range of the light?" he answered, "The whole space between the two places, and still further north. Of course it weakens as the distance increases."

The learned judge also refused to permit the witness to answer the following questions: "How light is that covered ditch made there on Swift street up to the point of the accident, ordinarily, on a very dark night, when those windows are lighted up?" "On a very dark night, between 7 and 8 o'clock, when those windows are lighted up in the bakery and confectionery shop in Burdick's block, do they throw sufficient light on this covered ditch and the point of the accident, that they can be plainly seen by any person walking along there, both at the north end of the plank, where the ditch is uncovered, and the covered plankway itself?" "When those windows are lighted up in the bakery and confectionery shop in Burdick's block, — take it on a very dark night, between 7 and 8 o'clock on the 13th of January, or about that season of the year,— is there sufficient light thrown from the windows to light up the ditch at the point of the accident, and the covered end of the ditch, so that the end of the plank and ditch would be plainly visible to any one going along?"

Some other questions of a similar import were put to the witness for the purpose of showing that the lights from these windows lighted up the street and place of the accident, so that a person traveling along there could see the covering of the ditch, and the end of the covering where the accident happened; all of which were excluded. While we are all of the opinion that the questions were proper and pertinent, and that the court should have permitted the witness to answer them, we are also of the opinion that the judgment ought not to be reversed because they were not answered.

It will be seen, by a careful inspection of the record, that no objections were made when like questions were afterwards put to, and answered by, the defendant's witnesses. The counsel for the plaintiff evidently concluded that it was not safe to

persist in his objection to that kind of evidence, and the case was afterwards tried with the understanding that such evidence was admissible and material. Even the witness Towne was permitted to answer that the whole street was in the range of the bakery lights, and that the whole street. between the two places and still further north was brought within the range of the lights. The other witnesses testified that the meat market and bakery lights were burning at the time the accident occurred, giving the size of the windows, the number of lights, their location in the shops with reference to the windows, and the situation of the windows with reference to the street and the place where the accident happened. The witness Perry testified on the part of the defendant, without objection, that he had noticed the effect which the lights in these shops had on the *locus in quo.* He says: " I noticed the manner in which the light was cast upon this covered ditch, and the ditch itself, by these lights inside. The light shone from the building out across the covered bridge there, so I could see clear enough to go along. I walked out that way; could see the end plainly, and the ditch." On his cross examination he said: " There was light enough so I could see. I went right across on the covering there, and walked up the plank covering; there was no obstruction or plank or anything there at the end of the plank walk."

Bowen, a witness for the defendant, testified: " I have had occasion to go there nights, and have seen the windows in this confectionery and bakery shop, and rooms north of them, in the Burdick block, and the lamp outside was lighted, and also the windows in the butcher shop across the way were lighted. I have noticed that you could see in between the blocks there very plainly in dark nights, as you were going along, so that you could see the plank covering the ditch, and the ditch itself. I was called there the evening of the 8th of the present month, about 7 o'clock in the evening. When these rooms were lighted up, I could see across the street, and could see the end

of the covered way. I should think I could see fifteen or twenty feet off, because the window was right opposite it, and I could not very well help seeing it. It threw the light onto the ditch."

Pomeroy, another witness for the defendant, testified: " Have been in this bakery spoken of in the evening when it was dark outside, and when the lamps were lit in the bakery and adjacent rooms, and the lamp over the door also. The light from the window sufficiently lighted Swift street, so a person could travel the street, and see any irregularities in it. These lights were lighted by Miss Maultpratt, on the evening of the 8th of this month, at my request, and I noticed that the light was sufficient to see anything in the street. I could see the end of the ditch plainly, and the plank covering the ditch, from the walk on Front street, from the light thrown out of those windows."

C. L. Brown, a witness for the defendant, testified: " I have not noticed the windows there particularly when they were lighted up in the evening. I have had occasion to go in there a good many times. I have never noticed particularly in a dark night the extent of light thrown from those windows on Swift street, with the exception of the night spoken of, the 8th of November. I was standing on Front street, at the south end of the ditch. From there I could see where the planks stopped very plainly."

Humphrey, a witness for the defendant, testified: "I have frequently gone up Swift street to my stable in the night — very dark nights. It was light enough to see where I was going. In passing along there I don't generally go on the plank. I generally go along-side of the plank."

In view of the fact that this question, as to the effect which the lights in the bakery, confectionery shop and meat market had upon the place of the accident, was so fully gone into by the defendant, after the ruling of the learned circuit judge upon the questions above stated, without objection, and as there

was very little, if any, contradictory evidence given on the part of the plaintiff upon this point, we cannot think the defendant was prejudiced by the rulings. The jury must have been just as enlightened upon this subject as though the witness Towne had been permitted to give testimony upon the same subject in confirmation of the statements of the other witnesses. Had this question as to the extent of light thrown upon the street by the lights in question been fairly controverted by the witnesses on the part of the plaintiff, the error of refusing to permit Towne to answer upon the same subject might have been fatal to the judgment; but the evidence being in fact uncontroverted by the plaintiff's evidence, the testimony of Towne would have been merely cumulative, and if it had been admitted would only have proved that which was afterwards sufficiently proved by the other witnesses. *Lucas v. Railway Co.*, 33 Wis., 41–59. In that case it was material to know what the conductor's orders were in regard to carrying passengers on his train. The defendant asked the question of the conductor as a witness in its behalf, and the court refused to permit him to answer. This court said the question ought to have been answered, and that it was error not to permit the answer; but because the superintendent of the railway, who was afterwards called as a witness by the defendant, was permitted to testify without objection that the conductor had orders not to take passengers on that train, and there was no other evidence in the case contradicting him, the error was immaterial. This court, as well as many others, have held that where an error intervenes which on the whole case is not prejudicial to the party taking the exception, the judgment will not be disturbed for such error. See cases cited by the learned counsel for the respondent in his brief.

This question as to the effect of the lights in the adjoining buildings at the time and place of the accident was fairly submitted to the jury by the learned circuit judge in his instructions, to which no exceptions were or could be successfully

taken.   In instructing. them as to what matters they would
take into consideration in determining whether the plaintiff
had himself been guilty of negligence, he directed them to
consider " whether the night was dark or otherwise; *whether
the ditch where the plaintiff fell, and the space surrounding
it, were lighted with lamps in adjoining buildings so that ob-
jects were visible, or otherwise;* whether the plaintiff himself
had knowledge of the condition of the highway at the place
of the accident, and that there was an open ditch there; whether
such ditch, at the place where the plaintiff fell, was obvious
to the sight or otherwise; and all other attending and sur-
rounding circumstances."   And he added: "If the plaintiff
did not know the condition of the highway in respect to the
ditch, or whether there was an open ditch at the point of the
accident or not, he was nevertheless bound to use ordinary care
in walking along, considering that it was 'in the night-time;
and if his traveling under the circumstances was negligent,
considering the highway as in good repair, and such negligence
contributed directly to the accident, the plaintiff cannot re-
cover, even though the highway was defective and out of repair.
If the plaintiff did know the condition of the highway, and
that there was an open ditch in it at the place of the accident,
he was bound, in passing along, to do so with ordinary care,
considering the circumstances of the ditch; and if he failed
to use such care, and his negligence contributed directly to the
accident, he cannot recover."   With the evidence above cited
before them, and these directions of the learned circuit judge,
it does not seem possible that the rejection of the evidence
offered by the witness Towne could have prejudiced the defend-
ant, or could in any way have changed the verdict of the jury.

On the whole record the case seems to have been fairly tried,
and the verdict and judgment well supported by the evidence.

*By the Court.*— The judgment of the circuit court is
affirmed.