## ANDERSON v. AVIS.

### AVIS v. ANDERSON.

#### (Circuit Court of Appeals, Fourth Circuit. May 22, 1894.)

#### No. 64.

1. APPEAL—EXCEPTION TO REFUSAL OF INSTRUCTIONS.
   Where an instruction of a general character is refused as a whole, a general exception, not directing the attention of the court to any specific proposition of law covered by the instruction, is too indefinite.

2. TRIAL—INSTRUCTIONS—COMMENTING ON EVIDENCE.
   On a sale by defendant of land for $10,000 in cash and $44,000 in stock of a certain company at par to purchasers procured by plaintiff, plaintiff brought suit against defendant for the excess of the price over $50,000. The court stated to the jury that the contract showed that the price agreed on was $54,000, to be paid in the form of $10,000 in cash, $44,000 in stock. *Held* error, as the jury might have understood that the stock was to be treated as equivalent to the amount of money it represented.

3. SAME.
   The court further stated to the jury that the sale was made without the concurrence and consent of plaintiff. *Held*, that this was error, it not appearing that plaintiff held such a legal relation to the property as to require defendant to secure his concurrence and consent before selling.

4. SAME.
   Stating to the jury that the evidence seems to prove certain facts, on a strongly contested point, where there is evidence to the contrary, without instructing them that they are not bound by the opinion of the court on the question, is error.

In Error to the Circuit Court of the United States for the Eastern District of Virginia.

This was an action by B. D. Avis, trading as B. D. Avis & Co., against Archer Anderson, administrator of Joseph R. Anderson, deceased, for breach of contract. The jury found a verdict for plaintiff, and judgment was entered thereon. Both parties brought error.

Charles V. Meredith, for plaintiff.
Edmund Waddill, Jr., for defendant.

Before GOFF and SIMONTON, Circuit Judges, and JACKSON, District Judge.

JACKSON, District Judge. In this case writs of error have been sued out by both parties from the circuit court of the United States for the eastern district of Virginia.

B. D. Avis & Co. brought their suit at law against Archer Anderson, personal representative of Joseph R. Anderson, deceased, claiming $10,000 damage. The plaintiff's contention is that he had a contract with Joseph R. Anderson, in his lifetime, for the sale of 30,000 acres of land in the state of Maryland, which, if made by him, he was to have all over $50,000 the land sold for. On the other hand, the defendant, Anderson, denies that the plaintiff was at any time his agent to sell the land, but admitted that he had given him permission to sell the land if he could before he (Anderson) disposed of it, upon the express condition that it was a sale in gross which should net the defendant, Anderson, $50,000, refusing at that time and always afterwards to surrender the control of the land to any one as agent to sell it. No express written contract was entered into between the parties, but a large amount of correspondence passed between the defendant, Anderson, in his lifetime, and his agent, C. M. Miller (who lived near the lands), and the plaintiff in the action, which plaintiff claims constituted a contract between the parties, and entitled them to receive any excess over $50,000.

In the view we take of this case, it is unnecessary at this time to review the evidence, to ascertain either its relevancy, or to determine whether a contract existed between the parties for a sale of the land, as the defendant admits that, if Avis brought him a purchaser, he would be entitled to any excess the land sold for over $50,000, which is all the plaintiff demands in this action. Whether there was any such excess in the sale is a question of fact for the jury to decide, under the law as given them by the court.

Under our practice, we only examine the evidence so far as may be necessary to ascertain whether the question of law raised upon the hearing and predicated upon it as given at the trial is correct. It is therefore unnecessary at this time to notice the first exception taken by the defendant to the admission of the plaintiff's evidence, as we think the question of law arising on the refusal of the court to grant the instruction prayed for by the defendant, and the charges given by the court, will dispose of the case.

As to the instruction asked for by the defendant, it is to be remarked that, while many points are intended to be covered by it, yet it is substantially one in the form of a charge. It is therefore general in its character, and the exception to its refusal is too indefinite for the court to determine whether or not the defendant was aggrieved by its refusal. It is true that the court refused it "as a whole," but it is equally true that the exceptant failed to direct the attention of the court to any specific proposition of law it contained. It was offered as a whole to cover the law, as the defend-

ant claimed. A portion of it, as asked for, may have propounded good law, and a portion of it bad law, as possibly was the case; yet, if the exceptant fails to direct specially the attention of the court to any proposition of law covered by it, when it is refused as a whole, and excepts generally to the ruling of the court in refusing the instruction, we hold that the exception is not well taken. Rule 10, U. S. Cir. Ct. App. 4th Cir., 47 Fed. vi. Had the attention of the court been specially directed to the different propositions of law propounded, and each had been ruled and rejected, and an exception taken to each ruling, an opportunity would then have been given the court to correct itself, if it desired to do so, which we think is often done. The practice observed in this case we think unjust to the court, and should be discouraged by the appellate court. As to that part of exception first taken to the charge of the court, it is subject to the same objection we have just considered, and of course nothing is saved by it to the defendant.

We come now to the consideration of the second bill of exceptions, which is more specific, and points out those portions of the charge to which the defendant took exceptions. The court, in its charge, says that "Avis & Co. brought to Gen. Anderson, as proposed purchasers of the land, the two men, Segal and Armstrong." These two men became the purchasers of the land. Anderson and wife's deed, conveying it to them, recites the price paid was $54,000. "The contract of May 25, 1892, between Gen. Anderson and Segal and Armstrong, shows that the price agreed on was fifty-four thousand dollars, which was to be paid in the form of $10,-000 in cash, $44,000 in the stock of the Paper Mill and Bag Co. of Camden, New Jersey."

As to the first paragraph, it is urged that the court erred in charging the jury as it did in regard to the meaning of the contract, and that it was not sufficiently clear as to the consideration Anderson received for the land. It appears from the contract made between the parties May 25, 1892, that the consideration was "ten thousand dollars payable in cash, and the balance was forty-four thousand dollars payable in the stock of the Victor Paper Mill and Bag Co., at par." It will be observed that the words "at par," found in the contract, are omitted in the charge as given. This omission, we think, is fatal to this portion of the charge, for the reason that, while Anderson was willing to accept the stock in payment for the land at par, it does not follow that it was "par stock," having a cash value of $44,000. The sale, as disclosed by the contract, was for cash $10,000, and the balance in stock representing a face value of $44,000, which not only the negotiations between the parties, but the evidence, shows had no fixed, ascertained, or market value. It does not appear that Anderson, in accepting the stock at its face or par value, estimated or valued it as worth the amount of money it represented. The jury might have understood the court as deciding that the sale was to be treated as a cash sale, and that the stock was equivalent to so much money, which would entitle the plaintiff to $4,000,—the amount

the jury found for the plaintiff. If this is what is intended by the charge, we do not concur; on the contrary, we think the court should have informed the jury that the sale was for $54,000,—$10,000 cash, $44,000 in stock,—and that, under the contract, the plaintiff would be entitled to any excess over $50,000 in cash that the land brought. If the money and stock would not realize over $50,000, the plaintiff could not recover in this action, but any amount the money and stock together realized over and above that amount, he was entitled to a verdict for the excess.

The exception taken to the second paragraph of the charge, which instructs the jury that "the evidence seems to prove that Anderson agreed upon $54,000 as the price of the land, and to receiving $44,000 of the price in stock of the paper company without previously informing Avis & Co., and without their concurrence and consent," we think, should be sustained. That portion of the charge tends not only to mislead the jury, but to withdraw from it the consideration of all the evidence bearing on the points to which it is directed. It is misleading, because the court tells them "that the evidence seems to prove" the facts stated in that portion of the charge. What the evidence proves should have been left alone to the jury for it to determine.

In this connection, we cannot overlook the two letters of Avis & Co., both bearing date May 19, 1892,—one addressed to Anderson, Richmond, Va., and the other addressed to Miller, Anderson's agent, at Scranton, Md.,—which the defendant claims were not only a notice of the negotiations pending between Anderson, Segal, and Armstrong for the sale and purchase of the land, and the proposition made by Segal and Armstrong, but an undoubted admission of the fact. It may be said that the legal construction of all papers are questions that belong to the court. That is true; but where papers contain facts, and they are introduced as evidence of the facts they contain, what they prove is a question for the jury. It seems to us that the facts contained in those letters, or the inference that the jury might have drawn from them, has been overlooked by the court in its charge in the hurry of the trial, for they certainly tend to show the notice of the negotiations pending five or six days before the sale. Without expressing any opinion as to the facts found in this part of the charge, we are clearly of opinion, as this was a strongly contested and disputed point, that it should have been left to the jury without any intimation from the court of its opinion, unless the charge stated that the jury was not bound by the opinion of the court as to the question of fact. The mere expression of an opinion upon the part of the court, when so qualified, is not error; but the omission to do so, as in this case, we hold to be error. Tracy v. Swartwout, 10 Pet. 80; Transportation Line v. Hope, 95 U. S. 297.

In this case the court states in three different paragraphs of the charge that "the evidence seems to prove" certain facts stated in the charge, which, we think, is such an expression of opinion upon the part of the court as to what were the facts proved, without any qualification whatever, which would tend to mislead the jury.

For the reasons assigned, we are of opinion to sustain the exception to this part of the charge.

Exception is taken also to that part of the charge that tends to instruct the jury that the sale "was made without the concurrence and consent of Avis & Co." Whether this was true or not, we do not think that Avis & Co. held such a legal relation to the property as to require Anderson to secure their concurrence and consent before he could sell it. It does not appear that Anderson ever surrendered the control of his property to Avis & Co. He repeatedly refused to sign a paper appointing them as agents to sell the property. We think the letters filed show this, and in this connection we refer to the letter of Miller to Avis & Co., dated December 26, 1891, in which he expressly declines to place "this estate in the hands of an agent to sell." Whatever rights Avis & Co. had were purely permissory, not amounting even to an option. They took chances in their efforts to sell the land. If they succeeded, they were entitled to the excess over $50,000 the land sold for, and nothing if the sale did not produce an excess. They did not sell it, but we assume that Segal and Armstrong derived their information from them, which induced Segal to write the letter of April 22, 1892, which opened up negotiations with Anderson, and not with Avis & Co. If this is true, they are the only parties that Avis & Co. ever brought to Anderson. Correspondence as to other parties took place, but it resulted in nothing. Why Segal should open up correspondence in regard to the property with Anderson if Avis & Co. "brought it to his attention" does not appear. If Avis informed Segal that he was the agent to sell, and satisfied him of that fact, he naturally would have commenced negotiations with him, instead of Anderson. There would have been no occasion for him to write to Anderson, informing him, as he did in his letter of April 22, 1892, that "a property of his had been brought to his attention." He would have most likely informed him, if there was any occasion to write him, who it was brought the property to his attention. But he did not, and the inference is that Avis did not tell him that he was the agent, for the reason that he could not truthfully say that he was the agent of Anderson to sell the property. The correspondence shows that Avis & Co. were fully apprised of the various stages of the negotiation, as their letter of May 19, 1892, to Anderson discloses, when they stated they "would accept $2,500 in cash, and $2,500 in the stock of the company, the par value of $100 per share, to be paid when the sale is made." It is a significant fact that they did not, in express terms, claim in that letter that they were the agents of Anderson; but, in stating their claim for compensation, they predicate it upon the assumption that they were the agents, when, as we have seen, it nowhere appears that Anderson ever surrendered the control of his land to them. The letter of Miller, Anderson's agent, of December 26, 1891, addressed to Avis & Co., to which we before referred, is too plain to admit of any doubt. There is nothing in the case to show that the terms expressed in it were ever modified. It says:

"We do not wish to place this large estate in the hands of an agent to sell; but should you find a purchaser before we sell, who will comply with our terms, paying us $50,000, we will agree to your having what you may obtain in excess of the purchase price just named as your compensation."

Mark the language employed. He refused not only to place the estate in the hands of an agent, but carefully fixed the amount the land must be sold for, and notified Avis & Co. that whoever sells the land must look to the excess of that price for their compensation. There is nothing in the case that justifies us in concluding that the terms expressed in the letter were so modified as to make Avis & Co. the agent of Anderson; on the contrary, the evidence tends to show that Anderson always refused to make them his agent.

We therefore conclude that the last exception to the charge must also be sustained.

It is unnecessary to notice the point raised that the action is premature.

The offer upon the part of Anderson to settle the matter upon the basis of paying the plaintiff $1,000, is a matter that requires no attention in this court, as, if the parties agree to such an adjustment, it should be entered in the circuit court.

For the reasons assigned, the judgment of the circuit court is reversed, and the cause is remanded to the court below, with directions to award a new trial, to be proceeded with in conformity to this opinion.