NORTHERN PAC. R. CO. v. KROHNE.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1898.)

No. 382.

1. NEGLIGENCE—PERSONAL INJURY—CHARGE TO JURY.
Where there is evidence tending to show that the plaintiff was not negligent, and that the defendant was negligent, it is the province of the jury to weigh the evidence, and determine the probable facts.

2. RAILROADS—PRECAUTIONS AS TO BELL.
It is the duty of a railroad to supply an engine with a bell which is adequate for the purpose, and its duty in this regard is not discharged if the bell is cracked, or otherwise defective, and does not sound loud enough to warn persons under ordinary circumstances.

3. APPEAL AND ERROR—INSTRUCTIONS TO JURY.
The plaintiff in error cannot urge objections to the instructions different from those to which the exceptions were confined in the lower court.

In Error to the Circuit Court of the United States for the District of Montana.

William Wallace, Jr., for plaintiff in error.

Richard R. Purcell and Thomas J. Walsh, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The defendant in error was the plaintiff in an action against the Northern Pacific Railroad Company to recover damages for personal injuries received by him while crossing the tracks in the company's yard at Livingston, Mont. A number of tracks extended through the yard from east to west. On the north side of the tracks were the railroad machine shops, in which the plaintiff worked for the company as a machinist from June, 1888, down to January 12, 1892, the date of his injury. Along the south side of the yard ran a fence. The streets of the city running north terminated at the fence, but at the end of G street some boards had been taken from the fence, making an aperture through which the men working in the shops had since the year 1888 entered the yard from the south, on their way across the tracks to their work. About 50 men traveled across by this path daily, four times a day, on their way to and from their work. No notification of any kind was ever given to any one not to cross the tracks at this point. On the morning on which the accident occurred, the plaintiff left his home at about 7 minutes to 7 o'clock, to go to the shops. Snow had fallen during the night, and the wind was blowing from the west, drifting the snow. He entered the yard through the opening in the fence at G street, and proceeded along the path across the yard till he came to a freight train standing upon one of the tracks. He then turned eastward, to go around the train. He passed across the track in front of the engine, turned back westward towards the path which he usually traversed, and at some point left the freight train, and turned northward towards the shops, and proceeded until he was struck by the switch engine in the yard.

It is contended by the plaintiff in error that the court should have instructed the jury to return a verdict for the defendant, upon the ground, not only that the evidence failed to show negligence on the part of the defendant, but that it affirmatively proved contributory negligence on the part of the plaintiff. It is urged that the court should have so charged, because the record discloses the following facts: That the plaintiff knew all about the switch engine, and knew that it began its work at 7 o'clock a. m., and that it would leave the roundhouse long enough before that time to run to the main track, and west on the same, through the yard, past the place of the accident, to report at the depot, one-fourth of a mile further west, and that they were constantly engaged in switching in the yards, using all the tracks for that purpose; that in crossing the yard, going to the machine shop, the plaintiff had to cross at least 10 tracks, and that the headlight of the yard switch engine was never lighted on coming out on the day shift, and the blowing of a whistle on the yard engine was forbidden excepting as an emergency signal; that the plaintiff left his house that morning at the usual hour, wearing an overcoat, with the collar turned up, and a Scotch cap pulled down over his ears; that when he came to the freight train headed east he turned, and left the path on which he was licensed to go, walked east along the train, passing two or three freight cars to reach the engine, passed around it, then turned,

and went down along the engine till he got opposite the engine cab or tender, or the end of the first car, when he turned, and started diagonally across the tracks, in a direct line for the shops, never stopping or turning until he was struck by the switch engine, and keeping his face all this time towards the west, or away from the direction in which he knew the engine was to be expected; that the brakeman on the freight train saw the plaintiff from the time he turned in front of the engine until he was struck, and the engineer of the same train saw the plaintiff pass the engine gangway, and the fireman saw him when he was struck and a moment before; that when the brakeman on the freight engine saw the probability of a collision he shouted from two to four times to the plaintiff to "look out there," and that, if the plaintiff had not had his ears muffled with cap and overcoat, he would have heard the warning in time to have escaped the injury; and that, if he had turned and looked, he would have seen the approaching engine; and that to walk diagonally across the tracks, with his face turned towards the west, without stopping to listen or turning to look, was gross negligence upon his part.

If the facts as they are stated in this argument were undisputed, there could be no doubt that the plaintiff's contributory negligence was such as to prevent his recovery. There is in the record, however, evidence tending to contradict nearly all of the material facts so stated. It is not our province to weigh the evidence, and determine what are the probable facts. That was the province of the jury. The case was properly submitted to the jury if there was in the evidence before it any testimony tending to show that the plaintiff was not negligent, and that the defendant was negligent as alleged in the complaint. We find evidence in the case tending to show that at the time when the plaintiff was injured it was still dark; that the freight train which first obstructed his path had its head lamp lighted, and it had tail lights on the cab, and the brakemen of that train still carried their lanterns; that it was not possible to see an approaching engine at a greater distance than 15 or 20 feet unless it carried a light; that, after he crossed the track in front of the freight train, the plaintiff proceeded westward alongside of the train to a point somewhere opposite the water tank or tender, or the first car, where he changed his course, leaving the freight train, crossed the track with his face towards the machine shops, which were to the northwesterly, and that at the time when he was struck he was crossing the main track, right on the path leading from the aperture in the fence at G street across the tracks to the machine shop; that the headlight of the switch engine was not lighted; that a rule of the company required that headlights on engines must always be burning when running, with or without a train, after dark; that it was the general custom in the yard to ring the bell in running up and down through it, and the rules of the company so required; that the bell was not ringing when it passed the witness Crandall, about 150 steps east of the place of the accident, nor when it passed the witness Barlow, west of the place of the accident; that the plaintiff himself did not hear the

bell ring, nor did the engineer of the freight train, who was in the cab of his engine. There was evidence that the bell on that engine did not ring as clear or as loud as others, and that it sounded as if it were cracked. There was evidence that the switch engine was going at about 12 miles an hour when it passed the witness Crandall, and at about 15 miles an hour when it passed the witness Barlow, and that the engineer in charge of the switch engine was accustomed to run the same in the yard at great speed, sometimes at as great a speed as 30 miles an hour. There was evidence that the plaintiff had on an overcoat, with the collar turned up,—how far it reached is not stated,—and that his cap was pulled down so as to catch his ears, or, as one witness said, to cover half his ears.

Counsel for the plaintiff in error relies upon the admissions of the plaintiff in his testimony, as follows: "From the time I turned from beside the freight to start across the track I kept a direct line, never stopping, with my face toward the machine shop; and after I turned around the freight engine my face was toward the west." This testimony is elsewhere explained by the plaintiff, and he testified that at the time when he had reached the main track he had also struck the path which he usually traveled, and that while crossing the main track at that place he was struck by the engine. He testified that when he came to the main track, for the purpose of protecting himself from any engine that might be coming up or down the track, he did the same thing as when he used to cross,—he looked around to see if there was any engine, and listened. The jury had the right to believe this testimony of the plaintiff, notwithstanding that the clear weight of the evidence may have been opposed to it. Counsel for the plaintiff in error contends that conclusive proof is found that the plaintiff had so muffled his ears as not to hear an approaching train, or the warning thereof, in the fact that he paid no heed to the shouts of the brakeman of the freight train, who testified that he shouted three times; but it appeared in evidence that the brakeman was in the cab of the engine, which was headed east, and that the windows of the cab were closed, and had some frost upon them, and that the cab had a storm door on. Under these circumstances, and with a strong wind blowing, it might be that a person of good hearing, and with no covering upon his ears, would have failed to hear the warning. There is other evidence, which went to the jury, tending to indicate that there was not sufficient time between the shouts of warning and the accident to render the warning of any avail; that the accident followed almost immediately upon the alarm being given. One witness testified that he heard the brakeman shout "Look out!" three times, and that he looked up, and saw a man on the tracks, and by that time the engine struck him. If it was true that it was dark at the time of the accident, so that an engine could not be seen at a distance of more than 15 or 20 feet, and the engine in question was running at a speed of from 12 to 15 miles an hour, at a place in the yards where it was known that workmen might be crossing the track with the license of the company, and it was running without a headlight, and without ringing a bell,

while a strong wind was blowing, carrying drifting snow, we cannot say, in the light of these facts, that the defendant was not guilty of negligence. And if it was true that the plaintiff undertook to cross the tracks on such a morning, with a coat collar turned up, and a cap pulled down so as to half cover his ears, and that at the time of the accident he was upon the path usually followed by him and his co-employés, and that before stepping upon the track on which he received his injury he turned and looked and listened, we would not be justified in saying that the court should not have submitted the question of the plaintiff's contributory negligence to the jury.

It is assigned as error that the court instructed the jury as follows:

"It is further claimed on the part of the plaintiff that the bell on the engine with which it was supplied for the purpose, among other things, of warning people who might be upon the track of the approach of the engine, was either cracked or otherwise defective, so that it sounded with an absence of 'ring.' You are instructed that the defendant was required to supply the engine with a bell which was adequate to such purpose, and that its duty in this regard was not discharged if the bell on the engine did not sound loudly enough to warn persons of the approach of the engine under ordinary circumstances; and if you find that the injuries which the plaintiff received were the result of the failure of the defendant to supply the engine with a proper bell, or if you find that the negligence of the defendant in this particular was one of the causes which occasioned the injury to the plaintiff."

It is urged that the doctrine announced in this instruction is contrary to the opinion of the court in the case of Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, where it was said:

"The ringing of bells and the sounding of whistles on trains going and coming and switch engines moving forwards and backwards would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employés in the yard, familiar with the continuously recurring movement of the cars, would take reasonable precaution against their approach."

The language of the opinion so quoted refers to a state of facts very different from that which, according to some of the evidence, were the facts in the case at bar. In the Aerkfetz Case the injured workman was engaged in repairing the track. His duty required him to be upon the track throughout the day. He was injured in the daytime by a slowly-moving engine, while he was engaged in his usual work, with his back turned to the engine. It was not the rule of the yard to give warning of the approach of the engine by the ringing of its bell, and the injured workman had no right to expect or rely upon such warning. But there is a further reason why the instruction is not open to the objection which is now urged against it. When that portion of the charge was given to the jury, it was excepted to by the defendant only upon the ground that it assumed that the duty of the defendant required it to give warning by means of a bell, without regard to other means of warning used. The objection so taken by the defendant was not upon the ground that the defendant was not required to ring a bell upon its switch engine while moving it about the yard, but that the charge of the court in substance informed the jury that the ringing of a bell was the only means that could be used for that purpose. This objec-

tion was not well taken, so far as the record informs us. The whole of the charge to the jury is not contained in the record. We may infer that in the portion which is omitted the court further instructed the jury, if necessary, and permitted it to determine whether or not a warning had been given by means of a whistle or a bell, or by other means. Bennett v. Harkrader, 158 U. S. 441, 15 Sup. Ct. 863; Nelson v. Flint, 166 U. S. 276, 17 Sup. Ct. 576. The plaintiff in error cannot now urge objections to the instruction different from those to which it confined its exception at the trial below. Davis v. Town of Fulton, 52 Wis. 657, 9 N. W. 809.

It is further assigned as error that the court sustained the plaintiff's objection to the following question put to one of the defendant's witnesses: "Did you ever know of the headlight being lighted on the switch engine in the yard when it came out at that hour of the morning?" The error in excluding this testimony, if error there were, was cured by the admission of other testimony by the defendant's witnesses, proving the fact which it was the purpose of the interrogatory to establish. One witness testified that "no headlights were put on the day engines for use in the yards; it was not required." Another said, "It was never done." There was no testimony whatever tending to contradict this evidence.

We find no error in the record for which the judgment should be reversed. It is therefore affirmed.