MAYOR, ETC., OF BALTIMORE v. STATE OF MARYLAND, to Use of
HUTCHISON et al.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1908.)

No. 811.

1. APPEAL AND ERROR (§ 730*)—ASSIGNMENTS OF ERROR—SPECIFICATION OF
   ERRORS.
   To comply with the rules of the Circuit Court of Appeals, assignments
   of error based on instructions should point out the particular errors re-
   lied on.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3013;
   Dec. Dig. § 730.*]

2. MUNICIPAL CORPORATIONS (§ 796*)—STREETS—DANGEROUS OBSTRUCTIONS—
   DUTY TO GUARD.
   It is the duty of a city to make and keep its highways reasonably safe
   for public travel by day or night, and if, in constructing or repairing
   such highways, it creates dangerous conditions, it is its duty to provide
   such guards or barriers or other safeguards as would be ordinarily and
   reasonably sufficient to protect persons lawfully using the highway in
   the exercise of proper care from injury therefrom.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig.
   § 1655; Dec. Dig. § 796.*]

3. MUNICIPAL CORPORATIONS (§ 821*)—EXCAVATION IN STREET—LIABILITY FOR
   INJURIES TO PERSON.
   A city in constructing a bridge made an excavation 25 feet deep into
   and along a street at a curve therein, into which an automobile ran
   in the night and a passenger therein was killed. Red lights had been
   placed around the excavation, but there was testimony tending to show
   that to a person approaching there appeared to be a row of lights on one
   side of the roadway and one light on the other, and that the driver of
   the car, misled by such appearance, ran between the two and so into
   the excavation. Held, in an action to recover for the death of the pas-
   senger, that the question whether defendant or its servants exercised
   proper care in placing the lights, or in reasonably safeguarding the
   place in other ways, was properly submitted to the jury.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig.
   § 1749; Dec. Dig. § 821.*]

4. NEGLIGENCE (§ 92*)—IMPUTED NEGLIGENCE—NEGLIGENCE OF DRIVER OF
   VEHICLE IMPUTABLE TO OCCUPANT.
   In an action to recover for the death of a passenger in an automobile,
   which ran into an excavation in a street alleged to have been negligently
   left unguarded by defendant city, the negligence of the driver of the
   car, if any, could not be imputed to the deceased, if the jury believe the
   accident occurred because of the failure of the city to properly safeguard
   its streets, unless he was himself chargeable with negligence contributing
   to the accident.
   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 142, 143;
   Dec. Dig. § 92.*]

   Boyd, District Judge, dissenting.

In Error to the Circuit Court of the United States for the District
of Maryland.

This is an action at law brought by the state of Maryland, to the use
of Frances C. Hutchison, widow of John C. Hutchison, deceased, and his
four infant children, Bessie Louise Hutchison, Catherine Hutchison, George

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

166 F.—41

Hutchison, and Lois Hutchison, against the mayor and city council of Baltimore, Md., for damages sustained by the equitable plaintiff as the result of the death of said John C. Hutchison in an accident caused by the alleged negligence of the defendant in leaving unguarded a portion of Merryman's lane, a public highway of the city, at or near the Stony Run embankment, while constructing a bridge.

The plaintiff's case, in effect, is that at the time of the occurrence the city was engaged in the construction of a large stone or concrete abutment over the tracks of the Maryland & Pennsylvania Railroad, on Merryman's lane, a public highway in Baltimore city, and was engaged in other similar work of construction and repair on the line of Merryman's lane, near said embankment, and in the progress of the work the city removed the earth adjacent to the south side of Merryman's lane, leaving a steep embankment or declivity extending along the south side of the roadway for several hundred feet, at or near the point at which the work was proceeding; that it was the duty of the city to protect the said roadway at the point overlooking the embankment, so as to protect and safeguard the public from accident while traveling along the highway; that the city negligently and carelessly failed to perform its duty in the premises, and left the roadway insufficiently protected; that in consequence said John C. Hutchison, deceased, a citizen of the state of Pennsylvania, a passenger in an automobile owned and driven by one Frank X. Hooper, lawfully and with due care proceeding westwardly along said roadway, known as "Merryman's Lane," at or about 8 o'clock p. m. on October 1, 1907, the automobile (containing said Hutchison and Hooper) was precipitated and thrown over the embankment, whereby Hutchison sustained injuries resulting in his death in a few moments after the accident; and that the accident was wholly caused by the acts and negligence of said city, without any negligence on the part of Hutchison, or on the part of Hooper, directly thereunto contributing.

The defendant pleaded not guilty; issue was joined, and trial had resulting in a verdict in favor of the plaintiff for the sum of $8,500, duly apportioned, pursuant to the laws of Maryland, among the widow and children by the jury.

Upon this verdict judgment was entered in favor of the plaintiff, and the mayor and city council of the city of Baltimore sued out this writ of error.

The assignments of error all relate to the giving of certain instructions offered in behalf of the plaintiff, and the refusal to give certain instructions offered by the defendant by the trial court, which instructions so given and rejected will be set out in full herein, with a view of understanding them as a whole. They are as follows:

"First. That the Circuit Court of the United States in and for the District of Maryland erred in granting the prayers offered by the plaintiffs, in the above-entitled cause, as follows:

"(1) It being admitted that Merryman's lane at the time of the happening of the accident mentioned in the evidence was a highway of Baltimore city, the jury are instructed that it was the duty of the defendant to keep the said highway reasonably safe for public travel by day and by night, and if they find that Merryman's lane at the time and place at which the said accident occurred was not reasonably safe for night travel by reason of the excavation adjacent thereto, then it was the duty of the defendant to exercise by its agents and servants reasonable care and skill to provide safeguards sufficient to warn the traveling public of danger, and to protect them against it; and if the jury find that the defendant did not so exercise the same at the time and place aforesaid, but then and there omitted to provide such guards, lights, or barriers, or such other safeguards as would be ordinarily and reasonably sufficient to warn and protect persons using the highway at night exercising reasonable care and prudence in the case, and further find that in consequence thereof John C. Hutchison was killed while properly using the said highway at night, and exercising reasonable care, then the verdict of the jury must be for the plaintiff.

"(2) It being admitted that the excavation adjacent to the public highway of Baltimore city, known as "Merryman's Lane," mentioned in evidence, was made by the defendant, the jury are instructed that it was the defendant's

duty to exercise such care and skill as would have been exercised under all the circumstances by an ordinarily prudent person to protect persons using the highway against accident by day or by night by reason of the said excavation; and if the jury find that at the time and place of the accident of October 1, 1907, the defendant did not exercise such care and skill, but omitted to provide such lights, barriers, or other safeguards as would be ordinarily and reasonably sufficient to warn and protect persons using the said highway at night from accident by reason of the said excavation, and that in consequence thereof the said Hutchison lost his life while properly using the said highway, and exercising such care as an ordinarily prudent person would have exercised under the circumstances, then the verdict of the jury should be for the plaintiff.

"(3) The jury are instructed that although they may find that the employés of the defendant placed certain red lamps in Merryman's lane at or near the Stony Run embankment, yet if they find that the said red lamps were so arranged as to deceive a person of ordinary prudence and intelligence and to cause him to mistake the true course and boundary of the highway, and shall further find that the deceptive arrangement of the said red lamps was due to the failure on the part of the defendant's employés to exercise that degree of care and skill in the premises which an ordinarily discreet and prudent person would have used, and if they also find that the said accident mentioned in the testimony was directly caused by such deceptive arrangement of said lamps, then the verdict of the jury should be for the plaintiff, unless the jury further find that John C. Hutchison was himself guilty of negligence directly contributing to the happening of the accident.

"(4) If the jury shall find the acts stated in the plaintiff's first prayer, and shall further find that John C. Hutchison was at the time of the accident resulting in his death a passenger and invited guest in an automobile owned and then driven by one Frank X. Hooper, and that the said Hutchison was not driving or participating in the driving or management thereof, then, even though the jury may find that the said Hooper was personally guilty of negligence in the management and control of the said automobile contributing to the accident, yet his negligence cannot be imputed to the said Hutchison, and forms no bar to the plaintiff's right of recovery in this case; provided the jury shall find that the said Hutchison was not himself guilty of negligence contributing to the happening of the accident resulting in his death, and provided the jury shall find that the accident was in consequence of the failure of the defendant to use ordinary and reasonable care to insure the safety of ordinary travel on said highway in its then condition.

"(5) The jury are instructed that the expression 'reasonable care and skill' or 'reasonable care,' as used in the plaintiff's first prayer, means that degree of care, caution, and skill which under all the circumstances of the case might be reasonably expected of ordinarily prudent persons in the situation of the respective parties at the time of the accident mentioned in the evidence.

"(6) If the jury shall find for the plaintiff they are instructed that in assessing the damages they may estimate the reasonable probability of the duration of the life of the deceased, and give to the equitable plaintiffs such pecuniary damages as the jury may find they have respectively suffered or will suffer as the direct consequence of the death of said deceased, and as the jury may find reasonable under the circumstances; that for his children the prospective damages may be estimated to their attainment respectively of the age of 21 years, and for his widow to the end of the probable duration of the joint lives of the deceased and herself.

"Second. That the Circuit Court of the United States in and for the District of Maryland erred in rejecting the prayers offered by the defendant in the above-entitled cause, as follows:

"(1) The jury are instructed that the plaintiffs have offered no evidence legally sufficient to entitle them to recover; that therefore, their verdict must be for the defendant.

"(2) The jury are instructed that the defendant is under no legal obligation to erect barriers, railings, or other structures in order to prevent persons traveling along its highway from straying therefrom.

"(3)'The jury are instructed that the defendant was not bound to erect both red lights and barriers to warn persons of any particular danger.

"Third. That, therefore, the said court erred in rendering judgment against the said defendant in said cause."

Edgar Allan Poe and Sylvan H. Lauchheimer (W. Cabell Bruce, on the briefs), for plaintiff in error.

John B. Deming and George Whitelock, for defendants in error.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

WADDILL, District Judge (after stating the facts as above). With the view of intelligently passing on the instructions given by the court, a brief statement of the facts in the case will be given.

The city, in constructing the bridge at the point where the accident happened, found it necessary to make an excavation into the southern line of the public highway, 20 feet wide, 25 feet deep, and extending along the highway some 100 feet or more. The testimony tended to show that on the night in question the city sought to protect this excavation by a railing or barrier, upon which there were four red lights, extending from the bridge out to and beyond the point in the excavation near the fourth light; and at the end of the fourth light, a scantling of timber of some 20 feet in length from the top of the barrier to the ground; and there was a fifth light some distance beyond the fourth light, placed upon a pile of timber. The excavation in which the automobile ran was at a point where the course of the highway veered to the northwest, and the extension of the excavation into the street made it necessary to bear sharply to the northwest, with a view of passing to the northern, rather than the southern, side of the highway; that in the area outside of the highway between, and in and about lights 4 and 5, the surface had the same appearance as the roadbed proper, which was caused by the passage of the city carts in conveying material and dirt to and from the excavation.

The plaintiff's case is that, as the automobile in which he was a passenger approached the bridge proceeding westwardly along said roadway, these lights were so placed as to mislead the driver of the automobile, and that he was especially misled by the fifth light upon the pile of timber near the road, placed at a distance of some 60 feet from the fourth light, which caused him to suppose that the four lights were a continuous row of lights on one side of the street, and this fifth light, not placed in line with the others, was on the opposite side of the road, and that he ran between the fourth and fifth lights, leaving the highway nearer to the fourth light, upon and over the traveled area aforesaid, passing through the opening used by the city carts as aforesaid, and pitched headlong down the embankment.

The city, on the other hand, insists that the excavation in the road was in all respects properly guarded and lighted, and the accident occurred by reason of the failure of the driver of the automobile to exercise the degree of care required of an ordinarily prudent person in approaching a place where there was danger or warning of danger; that the lights were not so placed as to mislead a traveler

in the exercise of due care, and that the automobile did not leave the highway at the point claimed by the plaintiff, but, on the contrary, that the automobile ran into and disarranged the barrier at or near the fourth light, and knocked same down.

Upon this state of facts, the case was submitted to the jury under instructions as above given, to which the plaintiff in error excepted as a whole, without pointing out the specific objections to all or any one of them, as contemplated by the tenth rule of practice of this court.

Strictly speaking, the writ of error should be dismissed for lack of proper assignments of error, since the court is left entirely in the dark as to what objection there is to any particular instruction. This omission seems wanting as well in the bills of exception filed in the lower court, as in the assignments of error. Johnston v. Jones, 66 U. S. 209, 221, 17 L. Ed. 117; Railroad v. Varnell, 98 U. S. 481, 25 L. Ed. 233; Block v. Darling, 140 U. S. 234, 11 Sup. Ct. 832, 35 L. Ed. 476; rules 10 and 11 (150 Fed. xxvii, 79 C. C. A. xxvii) of this court; Anderson v. Avis, 62 Fed. 227, 229, 10 C. C. A. 347; Thom v. Pittard, 62 Fed. 232, 235, 10 C. C. A. 352; and cases cited—the last two cases being decisions of this court; Western Union Telegraph Co. v. Baker, 85 Fed. 690, 691, 29 C. C. A. 392; N. P. Ry. v. Krohne, 86 Fed. 230, 235, 29 C. C. A. 674.

The first and second instructions given by the court for the plaintiff relate particularly, the first, to the city's liability generally for failure to maintain its highway; and the second, to its duty to the public by reason of the excavation made by it into the street. The court by the first instruction in effect informed the jury that the obligation upon the city was to keep its highway reasonably safe for public travel by day or night, and to provide such guards, lights, or barriers or other safeguards as would be ordinarily and reasonably sufficient to protect persons lawfully using such highway in the exercise of proper care.

This instruction properly propounds the law, and carefully safeguarded the city's rights, as settled certainly by authorities of the state of Maryland, and the Supreme Court of the United States, by which this court is governed. Laws Md. 1898, pp. 244, 310, c. 123, §§ 6 and 86; Mayor v. O'Donnell, 53 Md. 110, 36 Am. Rep. 395; Allegany v. Broadwaters, 69 Md. 533, 16 Atl. 223; Barnes v. Dist. Col., 91 U. S. 540, 23 L. Ed. 440; Rose's Notes, vol. 8, pp. 723, 724; Evanston v. Gunn, 99 U. S. 660, 25 L. Ed. 306. The cases cited apply as well to injuries arising from the city's negligence in the construction of the work authorized by it, as for an injury arising from the defective condition of its streets.

The second instruction relates more particularly to the city's duty because of the making of the excavation into the street. The Supreme Court of Maryland, in the case of B. & O. R. R. v. Boteler, 38 Md. 568, 585, a case in its leading features like the one under consideration, at the latter page, said that:

"The defendant was obliged so to construct its bridge and embankment adjoining the highway as not to render the approach to the bridge along the

highway dangerous to passengers by day or night, and the failure to perform this duty subjects it to liability for the consequences, provided the party thereby injured has used reasonable and ordinary care to avoid the danger."

The city owed the duty generally respecting its streets as aforesaid, and assumed the duty of safeguarding the same at the particular locality aforesaid, which was made especially dangerous by reason of the excavation, and this instruction submitted to the jury the question of whether or not, under the circumstances, the city used the necessary and proper precautions to that end, and was properly given.

The third instruction relates to the degree of care required of the defendant in arranging the lights intended to warn travelers of the danger at the place of the accident. An instruction on this subject was proper, as it was one of the controverted points in the case. The driver of the automobile testified that on approaching the excavation some of the lights appeared to be on the right or north side of the road, and one light widely separated from the rest, on the left or south side of the road, and he drove his machine right through them, and over the precipice. Another witness, Hayes, testified that the arrangement of red lights was such that one appeared on the left-hand side of the road, and the rest on the right-hand side of the road, "in a line of the continuation of the gutter on the north side of the boulevard." He further testified that such arrangement was "dangerously misleading." The fact is that these lights were all on the south side of the road, and none on the north, and were designed as a warning to travelers on the highway against the dangerous locality, and intended to keep them to the right or northern side of the road. Whether, as a matter of fact, they were so set or placed as to mislead travelers, was a fact to be considered by the jury, and the court, in the instruction under consideration, in apt terms properly submitted the same to them.

The fourth instruction offered by the plaintiff and given by the court relates to the doctrine of contributory negligence; that is to say, how far the decedent, John C. Hutchison, was affected or bound by the negligence of Hooper, the driver of the automobile, assuming that he was guilty of such negligence. The court properly instructed the jury, if they believed from the evidence that the accident was in consequence of the failure of the city to use ordinary and reasonable care to insure the safety of ordinary travel in said highway, in its then condition, that Hooper's negligence could not be imputed to Hutchison, if the latter was himself not guilty of negligence contributing to the happening of the accident which resulted in his death. The correctness of this instruction is conceded in argument, and the same is in accordance with the Maryland authorities. B. & O. R. R. v. State, 79 Md. 335, 342, 29 Atl. 518, 47 Am. St. Rep. 415. And this is the generally accepted doctrine. 1 Joyce on Damages, § 172; 7 Am. & Eng. Ency. Law, 477, 478; Little, Rec'r, v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652; Union Pacific R. R. Co. v. Lapsley, 51 Fed. 174, 2 C. C. A. 149, 16 L. R. A. 800; Evans v. Lake Erie & W. Ry. Co. (C. C.) 78 Fed. 782; Smith v. Day, 100 Fed. 244, 40 C. C. A. 366, 49 L. R. A. 108.

The fifth instruction offered by the plaintiff and given by the court is as to what is meant by reasonable care, and is free from objection. And the sixth relates to the elements entitled to be taken into consideration in assessing damages by a jury, which is likewise unobjectionable, and is in accordance with Maryland authorities. B. & O. R. R. v. State, Use of Chambers, 81 Md. 375, 32 Atl. 201; Reisterstown, etc., v. State, Use of Grimes, 71 Md. 584, 18 Atl. 881.

Considering the prayers offered by the defendant and rejected by the court, the first instruction rejected was to the effect that the plaintiff had offered no evidence legally sufficient to entitle the plaintiff to recover, and that the verdict should therefore be for the defendant. This instruction was manifestly improper, and should not have been given. No motion was made by the defendant to direct a verdict in its behalf, either at the conclusion of the plaintiff's testimony or that of defendant, or at any other time, and assuming that this instruction can be treated as in effect such motion, and in that way have the court review the evidence, it may be said that the case was clearly one which should have been submitted to and not taken away from the jury; and, the conflict in the testimony having thus been passed upon, the verdict, which is amply supported by the evidence, in favor of the plaintiff, should not be disturbed, or the judgment of the court thereon set aside.

The second prayer offered by the defendant and rejected by the court is defective, in that it failed to take into account the dangerous locality of the accident, as also the excavation, and the special danger incident thereto. Undoubtedly, a municipality is not required ordinarily to erect barriers, railings, or other structures to prevent persons traveling upon a highway from straying therefrom; but it does not follow that the obligation does not exist where the point is dangerous, either naturally, or because of the work being done in and about the highway at the particular time. Whether the excavation in this case was dangerous, or the railing thereto, or the warning given, were sufficient to protect persons from or warn them of such danger, were questions of fact, all to be determined by the jury upon consideration of the whole evidence. B. &. O. R. R. v. Boteler, 38 Md. 568, 585, supra; Reisterstown Turnpike v. State, Use of Grimes, 71 Md. 573, 18 Atl. 884, supra; B. & O. v. State, Use of Chambers, 81 Md. 375, 32 Atl. 201, supra.

The defendant's fifth instruction, which was also rejected, was to the effect that the city was not bound to erect both red lights and barriers to warn persons of any particular danger. That was properly rejected by the court, as the question of what the city should do had already been submitted to the jury by the previous instructions, and the instruction as drawn and rejected by the court inferentially told the jury that all that the city had to do was to place red lights or erect barriers; whereas both might have been insufficient. The city was bound to take such precautions as were reasonably necessary to make travel upon the highway safe, and it was for the jury to say whether what was done was sufficient or not.

The issues fairly arising upon the pleadings and the testimony adduced were whether the highway in question was unsafe for night

travel by reason of the excavation, whether safeguards necessary to overcome the danger were furnished, whether the barriers and lights were sufficient, whether the latter were deceptively arranged, and whether because of the city's negligence, without contributory negligence on the part of Hutchison, he lost his life. These questions were one and all submitted to the jury, upon instructions fairly, fully, and clearly covering the case, and we can see no reason why the verdict under such circumstances, rendered in behalf of the plaintiff, should be disturbed.

The judgment of the lower court will accordingly be affirmed, at the cost of the plaintiff in error.

·Affirmed. ·

BOYD, District Judge (dissenting). My view of this case is that the plaintiff is not entitled to recover· upon the undisputed facts disclosed by the testimony. The city of Baltimore was not, in my opinion, negligent. The excavation which was being made was in the course of repairs and improvements of the public highway. This excavation was 30 feet from the beaten track and that which was used by the public. One who kept within the track was far removed from any danger on account of the excavation. The city erected temporary barriers, and, as an additional protection to approaching travelers, also placed red lights to mark the line within which a traveler was to go. These lights, five in number, marked the south side of the roadway. A red light upon a highway is a signal of danger, and it warns the approaching traveler to take notice and make reasonable investigation before proceeding. In this case Hooper, who was driving in the nighttime a vehicle propelled by steam, admits that he made no such investigation; that from the hill which he was descending he inferred that the two lights, which were some distance apart, marked the two sides of the proper way, and, without stopping to look or make any examination whatever he pursued this route. I do not agree that this action on his part was such as a prudent person would have taken under the circumstances. In addition to the fact that he says he made up his mind as to the proper way when some distance off, he states further that the red lights displayed along the roadway meant nothing to him; in other words, that he paid no regard to the ordinary signals which are displayed to warn a traveler that he is in the presence of danger. The rule that the negligence of the driver cannot be imputed to a passenger who in no way participates in the negligent act does not, I think, apply in this case. That rule is only applicable where the road authorities or the defendant in the action has been guilty of negligence in the outset; that is, before that rule can be invoked there must be negligence on the part of the defendant, but for which the accident would not have occurred. In such instance the law says that the defendant cannot excuse himself from responsibility for such negligence where injury results to an .innocent passenger because the driver of the vehicle was himself negligent or did not use that care and precaution which devolved upon him. As I have said before, the city of Baltimore in this case, to my mind, had done all that was required of it, and therefore was not negligent at all, and

that this accident was due solely to the negligence of this driver of his steam machine upon the public highway, and his absolute refusal to take notice of signals which were ample for his protection. What is called "Merryman's Lane," the road in question, had been used as a public highway for 30 years. The declivity on the south side had existed for all this period, and no barriers or other signals at the point of the accident had been deemed necessary. The ledge of the declivity was originally 39 feet from the south line of the traveled roadway, and the excavation which had been made by the city in the course of repairs had taken off 9 feet, still leaving 30 feet of space from the south side of the track to the point of danger where the automobile tumbled over. The well-defined, traveled roadway at the place where the automobile left it is shown to be 23 feet in width, clear and unobstructed, and there was no danger of accident so long as the traveler kept anywhere within that beaten track. Cities are required to keep the streets in a reasonably safe condition for persons traveling in the usual modes by day and by night and exercising ordinary care. This is the general principle. Fences or barriers are not ordinarily required along a highway to prevent travelers from straying out of its limits, but, if there are excavations or other dangerous defects or obstructions close to the way, the city or local authorities, as the case may be, should erect barriers or take proper precautions to warn travelers of the danger. Elliott on Roads and Streets, p. 453. Though the municipality is required to keep in repair a traveled path of suitable and sufficient width within the limits of the highway, the law does not ordinarily require such path to be the whole width of the highway, and hence the municipality will not be liable for defects or obstructions in the part of the highway outside this traveled or wrought portion and not so connected with it as to affect its safety. A forceful case on this point is Farnum v. Concord, 2 N. H. 392. The town, which was the defendant in this case, was held not liable for an injury occasioned by an excavation by the side of the road, although the traveled way was only 12 feet wide and another excavation existed on the other side, and the whole vicinity by the side of a river was covered with nearly 2 feet of water; the court saying that it was no fault of the town that the guide, even under these circumstances, conducted the plaintiff's team out of the traveled way.

Whilst in country roads only a sufficient roadway to admit travelers to pass and repass in safety is required, it seems to be the settled law that the rule in cities is different, and that there the whole width of the street should be kept in proper repair. In our case, the place where the accident occurred was not immediately in the city of Baltimore, but was some distance out in the suburbs, and the excavation which was being made was not upon the roadway at all, but was, as stated before, 30 feet distant from it. The proximity of the excavation or dangerous point to the traveled way is the controlling one in regard to the erection of barriers, and I have, after much research, found no cases where there was a plainly outlined, safe roadway of the required width and the excavation or danger point was 25 or 30 feet from it that barriers were required to be erected for the safety of the traveler. If, however, there is a dangerous place, such as a declivity or excava-

tion, so close to the highway or to the traveled part thereof as to render the latter unsafe for travelers in the absence of a railing or barrier, the want of such railing or barrier. constitutes a defect in the roadway itself, for injuries from which the municipality is liable. But all the decisions relating to this point, so far as I have found, are instances in which the dangerous place was within a few feet of the traveled way, and I do not understand that even in these instances insurmountable or impregnable structures are required, but only such barriers or signals as will warn the traveler of the danger and advise him, so that by the use of reasonable care on his part he may pursue the safe track.

It was insisted by the defendant in error in this case, and the court, in its opinion, seems to take that view, that whether a barrier is necessary or that one sufficient has been erected is a question for the jury. As a general proposition that is true, and yet there is no principle more definitely settled than that, where the facts are undisputed or admitted, negligence alleged upon such facts is a question of law for the court.

In this case, the principal facts are uncontroverted. The danger point was 30 feet from where the driver of the automobile left the road. The city had taken precaution not only to erect barriers, but had placed red lights to give warning of danger and mark the line of the road. This, in my opinion, was all that the city was required to do, and if the driver of a vehicle, whether propelled by steam or otherwise, proceeded in the face of these barriers and warnings, which he was bound to see if he used ordinary prudence and care, he did so at his own peril, and the injury which resulted to him or to his passenger was due to his own recklessness, and not to any negligence on the part of the road authorities. I cannot consent to the proposition that the city is to be held responsible for an inference drawn by the automobile driver when he was some distance away as to what the red lights indicated, for the facts show conclusively that his inference was erroneous, and a moment's stop at the first red light, and even a casual examination of surroundings, would have disclosed to him his error. In my opinion, the fact that there were excavations or other unsafe places alleged or proven to be dangerously near the road at other points than where the accident occurred does not have any bearing in deciding this case. The principle is, the liability for an injury resulting from an unsafe highway must be based upon conditions at the point where such injury occurred, and not upon such as may exist at other points along the way. If, therefore, the barriers or signals, or both together, at the point where the automobile left the beaten track, were sufficient—and in my view of it they were—the city should not be mulcted in damages for an injury occasioned by the conduct of a driver who carelessly strayed from the way, and without taking notice of the warnings, which were ample, heedlessly drove over a precipice 30 feet distant.

The law in regard to public roads has been heretofore administered in view of the character of vehicles and means of propelling which have generally been in use. The public highways have not until recently been used for the operation of cars and vehicles propelled by

steam and electricity, and possibly in the further consideration by the courts of questions affecting the liability of municipalities or communities for defective public roads these facts will play an important part. It is a matter of common knowledge that horses, the animals usually employed in drawing vehicles upon the public highways, instinctively avoid danger. They will not go over a precipice nor step into a dangerous excavation. Even in the nighttime, in the darkness, they will keep the beaten way. In the operation of a steam engine the whole responsibility rests upon the driver. He has no assistance from his motive power in discovering the presence of danger or avoiding it, and therefore, it seems to me, the inevitable consequence must be that the courts will be constrained to hold that a greater degree of care and caution devolves upon one who operates a steam machine upon a public highway than is required of one traveling in the usual manner. But this last proposition is aside from the question involved here, and I merely mention it because it has occurred to me.

For the reasons given, I do not concur in the opinion of the court in this case.