ELIZABETH MECK, ADMINISTRATRIX, APPELLEE, V. NEBRASKA TELEPHONE COMPANY, APPELLANT.

FILED JULY 11, 1914.   No. 17,645.

1. **Telephone Companies:** EMBANKMENTS IN STREETS: LIABILITY. It is the duty of a telephone company making excavations and embankments in public streets under a license from a city to conform to city ordinances requiring proper guards, signals and barricades for the protection of the public, and a failure so to do is evidence of negligence.

2. **Municipal Corporations:** EMBANKMENTS IN STREETS: SIGNALS. Three red lights in a street, two a block apart and one between, do not, as a matter of law, warn a pedestrian in the night, when the ground is covered with snow, that there is a continuous embankment along the block.

3. **Telephone Companies:** EMBANKMENTS IN STREETS: NEGLIGENCE: QUESTION FOR JURY. In an action for alleged negligence resulting in the death of a pedestrian who fell from an embankment in a street and was run over by a street car, whether there was negligence on the part of defendant in permitting the embankment to remain longer than necessary and in failing to furnish proper guards, lights and barricades, *held* questions for the jury.

4. **Damages** in the sum of $9,000 for causing the death of a healthy man 27 years old, who was earning over $100 a month, with a fair prospect of promotion, *held* not excessive.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Hall & Bishop,* for appellant.

*Stewart, Williams & Brown, contra.*

ROSE, J.

This is an action to recover damages in the sum of $25,000 for alleged negligence resulting in the death of William B. Meck. Defendant is a corporation conducting a telephone business. It uses the streets of Lincoln for underground conduits and wires. The city is crossed from north to south by Twenty-seventh street. Along the west side of that thoroughfare, two feet or more from the curb, defendant dug a trench across intersecting streets R and S, throwing earth from the excavation on the east side, thus creating an irregular, sloping embankment about two feet high. A street railway with double tracks occupies 15 feet in the center of Twenty-seventh street, where there is a paved roadway 40 feet wide. The space between the embankment and the west rail varied from one foot to three feet. Meck was a locomotive fireman on the Chicago, Burlington & Quincy Railroad. While on his way to his work in the darkness, a few minutes before 6 o'clock on the morning of January 3, 1911, he fell from the embankment, and was run over by a street car and fatally injured. His wife, as administratrix of his estate, is plaintiff. In a petition stating a cause of action it is alleged, among other things, that defendant was negligent "in creating the said dangerous embankment in said public street, and in causing and permitting the same to be and remain in said street an unreasonable and unnecessary length of time, and without any guards or signals to warn and protect persons using said street, and without constructing and maintaining safe passageways over said ditch and through said embankment." Defendant denied negligence on its part, and pleaded that Meck's injuries, if they occurred while he was near to or attempting to cross the trench and the embankment, resulted from his own negligence. The jury rendered a verdict against defendant for $12,000. To prevent the granting of a new trial plaintiff filed a remittitur for $3,000, and, from a judgment in her favor for $9,000, defendant has appealed.

It is argued by defendant that the petition fails to state a cause of action, and that the evidence does not sustain a finding that negligence on the part of defendant was the proximate cause of Meck's death. The petition is not successfully assailed. There is proof tending to show the following facts, conditions and circumstances: Meck lived four blocks east of Twenty-seventh street at 3120 Vine street. According to his custom, in going to work, he left his home at 5:40 in the morning and started west on Vine street, intending to board at Twenty-seventh street what is described as an "owl car," which left Holdrege street at 5:45, running straight south on Twenty-seventh street and crossing Vine, T, S and R streets on its way down-town. His wife watched him going west on Vine street until he disappeared. It was a dark morning. The ground was covered with snow, and the temperature was 16 degrees below zero. The street lights had been extinguished at 1 o'clock. The owl car was two or three minutes late in leaving Holdrege street. The motorman said that, while he was running 10 or 12 miles an hour, he saw Meck on the embankment 4 or 5 feet southwest of the car, and that he appeared to be overbalanced; that he put one foot on the fender; that the side of the car at the front end struck him; that he fell; that the car ran over him; that his body was found on the embankment with his legs across the west rail of the west track. There was blood on the rail between S and R streets about 60 feet south of the crosswalk on the south side of S street. How Meck reached the fatal spot is not definitely shown. It is certain he did not wait in the cold for the car at Vine street, but walked where it would overtake him. He could see its light for more than half a mile. According to the story of the motorman, what he saw of Meck before he was injured occurred "in a flash." He did not see Meck until he was within four or five feet of the car. That he crossed over the trench and the embankment from the west sidewalk is uncertain. One witness said he found human footprints between the sidewalk and the embankment, but another testified to finding none. Meck reached Twenty-sev-

enth street at Vine street ahead of the car. It may fairly
be inferred that he either crossed the street railway tracks
to the west side and walked south on the sidewalk, or re-
mained in the street, following the west side of the track,
where he could signal and board the approaching car.
The crosswalks at S street were covered by the embank-
ment, the only approach to Twenty-seventh street from
the west side being a narrow passageway in S street. It
was customary for all south-bound cars on Twenty-seventh
street to stop at the south side of intersecting streets for
passengers, and for the owl car leaving Holdrege street
at 5:45 to receive passengers on the west side anywhere
along the track. It might also be inferred that Meck
crossed to the west side of Twenty-seventh street at Vine
street; that he walked south on the sidewalk to the open-
ing through the embankment at S street; and that he went
in the street along the west side of the railway track to
the place of the injury. Meck had a lawful right to pursue
any of the courses indicated.in using the public streets
and sidewalks, and for the purposes of this case it is im-
material which inference the jury drew from the evidence
and surrounding circumstances.

In making the excavation and the embankment defend-
ant acted under a license obligating defendant to conform
to city ordinances making it unlawful to permit the ex-
cavation to remain open longer than was actually neces-
sary, and requiring licensee to guard the excavation care-
fully while being made or used, and to maintain such bar-
ricades, guards, lights and signals as will protect the
public from injury or loss. As early as Thursday defend-
ant tore up the pavement, obstructed a portion of the
street and left the excavation open, knowing that work
would be suspended Sunday and Monday; the former be-
ing the first day of the new year and the latter being
observed as a holiday. The collision occurred before day-
light on Tuesday morning following. From the evidence
it cannot be held, as a matter of law, that the excavation,
with the resulting embankment, was not allowed to remain
open longer than was actually necessary.

During Monday night a watchman occupied a little, im-provised tent on Twenty-seventh street near S street, but he assumed no duty to protect the public further than to see that red lights were kept burning. There was no bar-ricade except around a manhole at S street. As already stated, there were no street lights after 1 o'clock at night. There is a dispute about the number of red lights along the trench, but a disinterested witness, who waited for the owl car at R street and who boarded it where it stopped after the collision, testified that he saw three only, one at the south end of the embankment by R street, one at the north end by S street, and one between. If his observa-tions were accurate, red lights on Twenty-seventh street at R and S streets and one near the alley between, when the ground, on a dark night, had been covered by recently fallen snow, would not, as a matter of law, warn a pedes-trian that there was an embankment along a 300-foot block between S and R streets. *City of Oklahoma City v. Welsh,* 3 Okla. 288, 41 Pac. 598. The space between the obstruc-tion in the street and the west rail of the street car track varied in width from one to three feet. Where Meck was struck the intervening space was a foot wide. He had a right to walk along this space at night, until the owl car, which stopped for passengers without regard to the place, approached. He had a right either to step to the west out of the way of the car or to have notice or warning that there was an embankment to prevent him from doing so. Whether he got on the embankment in this manner or whether he attempted to cross it from the sidewalk is un-certain, but there is evidence tending to show that he was overbalanced by the obstruction. It was the duty of the city to keep the streets in a reasonably safe condition for travel, or to give warning signals, or to protect the public from the trench and resulting embankment by railings or by other means. These duties, under the license men-tioned, extended to defendant also.

Whether there was negligence on the part of defendant in permitting the excavation, with the resulting embank-ment, to remain open longer than was actually necessary,

.and in failing to properly guard the excavation, and in failing to maintain sufficient barricades, guards, lights .and signals were all questions of fact for the jury. *City of Wyandotte v. Gibson,* 25 Kan. 236; *Fugate v. City of .Somerset,* 97 Ky. 48; *Hyatt v. Trustees of the Village of Rondout,* 44 Barb. (N. Y.) 385; *Pettengill v. City of Yonk- ·ers,* 39 Hun (N. Y.) 449; *City of Rockford v. Russell,* 9 Bradw. (Ill.) 229; *Alexander v. City of Big Rapids,* 70 Mich. 224; *Fox v. City of Chelsea,* 171 Mass. 297; *Crowther v. City of Yonkers,* 15 N. Y. Supp. 588; *Hyde v. City of Boston,* 186 Mass. 115; *City of Baltimore v. Maryland,* 166 Fed. 641; *Grider v. Jefferson Realty Co.,* 116 S. W. (Ky.) 691. This assignment of error is therefore overruled.

A formidable argument is directed to the proposition that contributory negligence of Meck was the proximate ·cause of his death, and that therefore there was error on the part of the trial court in refusing a peremptory in- .struction requested by defendant. On this branch of the case, the theory of defendant seems to be that Meck know- ingly ran headlong from the sidewalk into the moving car. It is insisted that he was warned by the cluster of lan- terns at the manhole and by the red lights along the trench; that he crossed piles of brick and sand taken from the pavement and ran onto the embankment with a mo- mentum which hurled him against the car. This conten- tion is overcome by the fact that a different deduction may properly be drawn from the evidence. Even if de- fendant is not mistaken in assuming Meck approached the ·embankment from the sidewalk, that fact alone would not establish contributory negligence as a matter of law. Knowledge of existing conditions in the street does not .alone preclude a recovery. Want of such care as a pru- dent man would exercise in view of the danger is the test ·of contributory negligence. The question is usually one for the jury. *Nicholson v. City of South Omaha,* 77 Neb. 710; *City of Beatrice v. Forbes,* 74 Neb. 125. This assign- ment is likewise overruled.

Complaint is also made because an excessive recovery was permitted and sustained. Meck was 27 years old and

was in good health. He had regular employment, with an earning capacity exceeding $100 a month. He had a fair prospect of promotion. Plaintiff sued as administratrix of his estate, and was entitled to recover compensatory damages in that capacity for the benefit of those entitled thereto. It has not been shown that the recovery was excessive.

In view of the conclusions reached on the questions discussed, there was no prejudicial error in giving or in refusing instructions.

No reversible error has been found in the record, and the judgment is

AFFIRMED.